IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 25-cr-00194-JLK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MOHAMMED SABRY SOLIMAN,

      Defendant.

---

## RENEWED MOTION FOR ORDER PRECLUDING REMOVAL OF ESSENTIAL MATERIAL WITNESSES

---

Defendant, Mohammed Sabry Soliman ("Mr. Soliman"), by and through undersigned counsel, hereby respectfully renews his previously filed Motion to Preclude Removal of Essential Material Witnesses. This pleading supplements the prior motion with additional facts as well as legal authority under the All Writs Act (28 U.S.C. § 1651(a)). Because the Court's order precluding removal has expired, this pleading is styled as a renewed motion rather than a supplement.

### STATEMENT OF CONFERRAL

On May 14, 2026, the Court ordered the parties to confer regarding the potential removal of Mr. Soliman's family and the issues such removal could create in this case. The Court encouraged the parties to work together to prevent violations of Mr. Soliman's constitutional rights to prepare and present a defense, and to receive due process, that may occur if the government removes Mr. Soliman's family and seeks the death penalty.

The parties have conferred and remain in ongoing conferral regarding these issues.

With respect to removal itself, the government reiterated to the defense, as it informed the Court on May 14, that it cannot prevent the removal of Mr. Soliman's family.[1] The government informed the defense that it contacted an official in the ICE Enforcement and Removal Operations ("ERO") office and asked that office not to remove the family pending the hearing in this case scheduled for Friday, May 29, 2026 at 10:30 am. The government advised the defense that the ERO official stated that ICE cannot guarantee it will not remove the family before May 29, but that as of May 15, it did not have a plan in place to do so. Based on this communication, the government believed it was likely that the family would not be removed prior to May 29.

The parties also discussed alternatives to an order precluding removal pending further order of this Court. The defense advised the government that it agrees with the Court's statement at the May 14 hearing: "it's a little premature to ask the defense to do [Rule 15 depositions] when they don't know yet whether there's going to be [an effort to seek the] death penalty or not." ECF 99 (5/14/26 Tr., at 29). The defense also agrees with the Court that "investigation precedes deposition." *Id*. The defense informed the government that it will engage in mitigation investigation relating to Mr. Soliman's family but, as counsel informed the Court on May 14, counsel cannot establish rapport, gather information, decide to move forward with depositions, prepare for testimony, and conduct depositions in less than two weeks.

---

[1] While the criminal division of the U.S. Attorney's Office for the District of Colorado asserts it cannot prevent the family's removal, the civil division of that same office is actively seeking their removal in a civil matter before U.S. District Court Judge Wang. For example, on May 1, 2026, the government moved for an expedited ruling dissolving Judge Wang's stay of removal. *See El Gamal, et al. v. Mullins, et al.,* D. Colo. 26-cv-01763-NYW, ECF 25. On May 18, 2026, four days after this Court urged the criminal prosecutors to take steps to prevent the family's removal, the government asked Judge Wang to deny the family's amended habeas corpus petition and request for a Temporary Restraining Order. *Id*., ECF 35. And on May 22, 2026, that same U.S. Attorney's Office filed a second pleading asking Judge Wang to dissolve her stay, knowing such an order would lead to their imminent removal, despite the family's pending litigation in the Fifth Circuit. *Id*. ECF 36.

The parties also discussed material witness warrants. The defense explained that nothing in 18 U.S.C. § 3144, or any other authority, would prevent ICE from removing Mr. Soliman's family even if this Court were to issue material witness warrants. The government did not dispute this reading of the statute. The government informed the defense that it would not oppose a motion for material witness warrants, and inquired as to whether the existence of such warrants would aid the family in avoiding removal through pending civil litigation. *See El Gamal, et al. v. Mullins, et al.*, D. Colo. 26-cv-01763-NYW. Upon information and belief, material witness warrants would not affect the outcome of those proceedings.

The parties also addressed the possibility of returning the family to the United States through Significant Public Benefit Parole ("SPBP"). The government cannot guarantee that the family would be eligible for SPBP or would be re-admitted into the United States in the future pursuant to SPBP.

Finally, the parties discussed the logistics surrounding live video testimony from Mr. Soliman's family from outside the U.S. Neither party knows where the family will be when their testimony is required. These logistics depend on the witnesses' location, the date their testimony is required, their physical and mental conditions at that time, the relations between the United States and the government of the country in which they are living at that time, and other factors beyond the parties' control. Given these unknowns, the parties cannot guarantee the family will be able to provide live video testimony in this case in the future, and cannot provide the Court with more information regarding this issue at this time.

Following those conversations, the defense advised the government that it would file this pleading, renewing Mr. Soliman's request for an order precluding his family's removal and citing the All Writs Act (28 U.S.C. § 1651(a)) as supplemental authority. In the same email, the defense

asked the government to submit formal requests for Deferred Action ("DA") and Administrative Stay of Removal ("ASR") for Mr. Soliman's family. DA and ASR are discretionary forms of relief from removal that may be granted by U.S. immigration officials upon request from a law enforcement agent, such as a federal prosecutor. *See* Ex. A, "Toolkit for Prosecutors," U.S. Immigration and Customs Enforcement (published April 2011) (see pp5-8), available at https://www.ice.gov/doclib/about/offices/osltc/pdf/tool-kit-for-prosecutors.pdf, last visited May 25, 2026.

In response, the government informed the defense that its position remains that the Court does not have any legal authority to issue an order prohibiting the removal of Mr. Soliman's family. The government also stated it has not requested DA or ASR for the family and noted that "none of the family members are critical witnesses for the prosecution, and we are not aware of instances in which these tools have been utilized to make requests on behalf of the defense to secure evidence or testimony. Our position remains that there are other tools available to the defense to do so (including material witness warrants, Rule 15 depositions, etc.)." The government did not state whether it would submit requests for DA and ASR on behalf of the family in this case.

**INTRODUCTION**

The Court stated it believes it lacks the authority to issue an order precluding the removal of Mr. Soliman's family. However, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In this case, an order precluding the removal of Mr. Soliman's family is necessary to protect Mr. Soliman's Fifth, Sixth, and Eighth Amendment rights to prepare a defense, present a defense, receive due process, and

prevent cruel and unusual punishment. Such an order would be "in aid" of this Court's jurisdiction over this criminal action and "agreeable to the usages and principles of law."

## FACTUAL BACKGROUND

Mr. Soliman respectfully incorporates herein all factual information previously submitted to the court in connection with this issue. *See* ECF 77, 78, 81, 84, 87, 90, 99. In addition to that information, he respectfully moves the Court to consider the facts set forth in two exhibits to this pleading. *See* Ex. B; Ex. C.

## LEGAL AUTHORITY AND ARGUMENT

The Supreme Court "consistently has construed the All Writs Act to authorize a federal court to 'issue such commands…as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 40 (1985) (quoting *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977)). Several cases help delineate this authority.

For example, in *United States Alkali Export Ass'n v. United States*, the Supreme Court held that the predecessor to the All Writs Act "may not be used as a substitute for an authorized appeal." 325 U.S. 196, 203 (1945) (analyzing § 262 of the Judicial Code). In that case, the government brought suit in federal district court under the Sherman Anti-Trust Act against several corporations that produced and exported alkali chemicals.[2] The corporations moved to dismiss the complaint on the grounds that the government may not sue in federal court unless and until the Federal Trade Commission investigates the suspected anti-trust violations and gives the corporation an

---

[2] These chemicals were then, and are still today, used in various industries including construction, water treatment, and textile manufacturing.

opportunity to comply with the law. The district court denied the motion to dismiss. The corporations did not appeal to the Circuit Court. Instead, they petitioned the Supreme Court for a *writ of certiorari* under § 262 of the Judicial Code. The Supreme Court agreed that it had the authority to issue such a *writ*, but declined to do so. Its authority was rooted in a statute governing appeals in Sherman Act cases, which stated that "an appeal from the final decree of the district court will lie only to the Supreme Court." *U.S. Alkali*, 325 U.S. at 201 (quoting 15 U.S.C. § 29). Thus, *U.S. Alkali* teaches that the All Writs Act provides a court with jurisdiction over an appeal when a statute specifically authorizes such appeal to that court.

In *Price v. Johnston*, the Supreme Court held that § 262 gives a federal appeals court the power and discretion to order an incarcerated pro se appellant to be transported to participate in his own oral argument. 334 U.S. 266 (1948).[3] The Court held that such an order "may be issued where its use is calculated, in the sound judgment of the circuit court of appeals, to achieve the ends of justice entrusted to it." *Id*. at 279. "In other words, the writ is available in those exceptional cases 'where, because of special circumstances, its use as an aid to an appeal over which the court has jurisdiction may fairly be said to be reasonably necessary in the interest of justice.'" *Id*. (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 274 (1942)).

In *Harris v. Nelson*, the Supreme Court held that 28 U.S.C. § 1651 authorizes a federal district court to direct a defendant to answer the plaintiff's interrogatories in a habeas proceeding. This was so despite the facts that "Rule 33 of the Federal Rules of Civil Procedure is not applicable to habeas corpus proceedings" and "28 U.S.C. § 2246 does not authorize interrogatories except in limited circumstances not applicable to this case." 394 U.S. 286, 290 (1969). The Court wrote:

---

[3] *Price*'s other holding, that the district court improperly dismissed Mr. Price's habeas petition, was later abrogated by statute. *See McCleskey v. Zant*, 499 U.S. 467, 483 (1991) (citing 28 U.S.C. § 2244 (1964 ed.)). This change in law did not affect *Price*'s statements on the All Writs Act.

> [W]ith respect to methods for securing facts where necessary to accomplish the objective of the [habeas] proceedings Congress has been largely silent. Clearly, in these circumstances, the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 U.S.C. § 1651. This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.''

*Harris*, 394 U.S. at 299 (quoting *Price*, 334 U.S. at 282).

In *United States v. New York Telephone Co.*, the Supreme Court held that 28 U.S.C. § 1651 authorizes a district court to order a private phone company to assist the FBI in unobtrusively employing pen registers. 434 U.S. 159 (1977). In that case, the FBI obtained an order authorizing installation of pen registers to investigate an illegal gambling enterprise. The order directed the New York Telephone Company to "furnish the FBI all information, facilities and technical assistance necessary to employ the pen registers unobtrusively." *Id*. at 161. The phone company moved to vacate that portion of the order. The district court and Ninth Circuit agreed that the All Writs Act gave the court discretion to issue the order, but the Ninth Circuit found the order was an abuse of that discretion. The Supreme Court reversed, finding the order "was consistent with the intent of Congress" because the phone company's assistance "was required…to implement" the court's lawful order. *Id*. at 172. The court explained:

> This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.

*Id*.

In Colorado, United States District Court Judge Martinez recently issued an order prohibiting the removal of a habeas petitioner pursuant to the All Writs Act. *Arostegui-Maldonado*

7

*v. Baltazar*, 794 F.Supp.3d 926 (D. Colo. 2025). The Court held, "it appears well within this Court's authority to issue an injunction preventing Maldonado's removal to preserve its jurisdiction over the Petition while it remains pending." *Id*. at 946. Judge Martinez cited the Supreme Court's recent reliance on the All Writs Act to preclude the removal of a class of aliens seeking relief from summary removal under the Alien Enemies Act (AEA). *See A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025) ("We had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter. 28 U.S.C. § 1651(a).").

In a similar circumstance, the District Court for the Southern District of New York also issued a stay of removal based on its authority under the All Writs Act. *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398 (S.D. N.Y. 2004). After ICE violated that order by removing the habeas petitioner, the court wrote, "[i]t is well settled that the courts of the United States have the inherent and statutory (28 U.S.C. § 1651) power and authority to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise." *Id*. at 404 (quoting *Mississippi Valley Barge Line Co. v. United States*, 273 F.Supp. 1, 6 (E.D. Mo. 1967), *aff'd* 389 U.S. 579 (1968)).

**CONCLUSION**

"The writ of habeas corpus has played a great role in the history of human freedom. It has been the judicial method of lifting undue restraints upon personal liberty." *Price*, 334 U.S. at 269. The same can be said of the type of order Mr. Soliman seeks in this case. Just as the All Writs Act provides the basis for the writ of habeas corpus, it authorizes this Court to issue a temporary injunction prohibiting the government from removing Mr. Soliman's family unless and until this Court determines their presence in the United States will not be necessary to protect Mr. Soliman's constitutional rights.

This is an exceptional circumstance: six essential mitigation witnesses are at risk of imminent deportation, while the DOJ weighs whether to seek the death penalty against their ex-husband and father. Due to these special circumstances, the use of the All Writs Act to issue an injunction prohibiting their removal would be "an aid to [a case] over which the Court has jurisdiction [that is] reasonably necessary in the interest of justice." *Id.* at 279.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

*s/ David Kraut*
DAVID KRAUT

*s/ Jennifer Beck*
JENNIFER BECK

*s/ Kelly Christl*
KELLY CHRISTL

Assistant Federal Public Defenders
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: David_Kraut@fd.org
Email: Jennifer_Beck@fd.org
Email: Kelly_Christl@fd.org
Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I filed the foregoing ***Renewed Motion for Order Precluding Removal of Essential Material Witnesses*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Melissa E. Hindman, Assistant United States Attorney
Email:  melissa.hindman@usdoj.gov

Sarah E. Howard, Assistant United States Attorney
Email: sarah.howard2@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Mohammed Sabry Soliman (via U.S. mail)

*s/ David Kraut*
DAVID KRAUT
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Email: David_Kraut@fd.org
Attorney for Defendant

10